**GENOVA BURNS LLC**
Angelo J. Genova, Esq.
Lauren W. Gershuny, Esq.
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777
*Attorneys for Plaintiff, Tamar Herman*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TAMAR HERMAN,<br><br>     Plaintiff,<br><br>  vs.<br><br>SOUTH ORANGE-MAPLEWOOD SCHOOL DISTRICT BOARD OF EDUCATION, AND FIEDELDEY CONSULTING, LLC,<br><br>     Defendants. | Civil Action No:<br><br>Civil Action<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Tamar Herman ("Plaintiff" or "Herman"), by and through her undersigned counsel, Genova Burns LLC, by way of Complaint against the Defendants, South Orange-Maplewood School District Board of Education ("SOMSD" or "District" or "Defendant") and Fiedeldey Consulting, LLC ("Fiedeldey" or "Defendant Fiedeldey"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action in response to Defendants' role in a malicious and antisemitic campaign to malign Plaintiff and SOMSD's wrongful spurning of Plaintiff's rights to due process before placing Plaintiff on an unjustified administrative leave. What started as a simple misunderstanding between Plaintiff, who is Jewish, and one of her second-grade students, who is Muslim, was transformed into Defendants' complicity in a parade of outrageous, false, defamatory and antisemitic statements and relentless discriminatory treatment of Plaintiff, a

1

highly respected 30-plus year veteran tenured elementary school teacher. In the immediate aftermath of the misunderstanding between Plaintiff and her student, Defendant SOMSD abruptly, and without providing Plaintiff an opportunity to tell her side of the story, wrongfully placed Plaintiff on administrative leave, failed to abate, and ultimately joined in on, the student's mother's and other community members' false, malicious, and virulently antisemitic accusations that Plaintiff engaged in Islamophobia. Defendants' acquiescence to the harsh, unfair, and untrue statements lodged against Plaintiff, as well as their own false and defamatory publications against her, lie in sharp contrast to their treatment of the vicious antisemitic attacks hurled at Plaintiff.

## PARTIES

2.      At all relevant times herein, Plaintiff was a resident of New Jersey, a tenured second-grade teacher employed by the SOMSD, and Jewish.

3.      At all relevant times herein, Defendant SOMSD was a public entity school district, established and operating under the laws of the State of New Jersey, with an address at 525 Academy Street, Maplewood, New Jersey 07040.

4.      At all relevant times herein, Defendant Fiedeldey was a limited liability company, located at 10 Morton Place, Oakland, New Jersey 07436, which was in the business of providing professional training support to school districts, educators, families, advocates and agencies.

## JURISDICTION & VENUE

5.      This court possesses jurisdiction under 28 U.S.C. § 1331, and 42 U.S.C. § 1983 because this action arises under the Constitution and laws of the United States.

6.      In addition, the court possesses supplemental jurisdiction under 28 U.S.C. §1367 to hear and adjudicate Plaintiff's state law claims.

7.      Each act alleged herein was done by Defendant SOMSD, or its officers, agents, or employees, acting under color and pretense of the statutes, ordinances, customs, and usages of the State.

8.      Venue is properly laid in this District under 28 U.S.C. § 1391, because all parties reside in the District and a substantial portion of events or omissions giving rise to this action occurred in the District.

**FACTS COMMON TO ALL COUNTS**

**Plaintiff's Prior Unblemished Professional Reputation and Employment History with the SOMSD**

9.      Plaintiff is a beloved veteran teacher of over 30 years with a spotless employment record and a long history of teaching and nurturing elementary school students, a job which she loves and views as a privilege.

10.     For approximately 20 years, Plaintiff has been a devoted teacher at the Seth Boyden Elementary School located in the SOMSD, one of New Jersey's most diverse schools.

11.     Throughout her tenure as an educator, Plaintiff has consistently incorporated diverse faiths, cultures, traditions, and backgrounds in her teaching and curriculum and has valued the same.

12.     An example of Plaintiff's cultural sensitivity is an online lesson Plaintiff taught during Covid remote learning that included a picture on a slide of a child wearing a hijab.

13.     Prior to the event complained of, and throughout her more than three decades as a teacher, Plaintiff had maintained a stellar reputation as an educator and was well respected among students, parents, and faculty. Her personnel files contain glowing recommendations from

her supervisors as well as letters of appreciation and thanks from numerous former students and their parents.

14.     Prior to the event complained of, Plaintiff had no history of discipline from the District.

15.     Prior to the event complained of, Plaintiff had never received or been the subject of a complaint regarding her alleged lack of sensitivity to any student's background, ethnicity, national origin, race, religion, or any other similar legally-protected category.

16.     Plaintiff has obtained the status of tenure within her teaching position.

17.     Indeed, Plaintiff has a property interest in her tenured teaching position, which cannot be stripped from her without the SOMSD demonstrating just cause and providing her with a hearing.

**The October 6, 2021 Event**

18.     On October 6, 2021, while class was in session, Plaintiff noticed that one of her second-grade students was wearing a hood that blocked the child's eyes (as well as a Covid-19 mask which blocked her face).

19.     The SOMSD school policy indicates that students are prohibited from wearing any item that blocks their vision and materially interferes with their schoolwork. The relevant part of the policy reads as follows:

> "Students may not wear clothing or engage in grooming practices that present a health or safety hazard to the individual student or to other; materially interfere with schoolwork, create disorder, or disrupt the educational program; cause excessive wear or damage to school property; or prevent the student from achieving his or her own educational objectives because of blocked vision or restricted movement."

20.    While Plaintiff was aware that this student regularly wore a form-fitting hijab, the article of clothing Plaintiff witnessed that day did not resemble the hijab that this student wore every day prior to the day in question.

21.    Accordingly, Plaintiff believed in good faith that the student's hijab was under this hood.

22.    Intending to encourage this student to engage in her schoolwork as her eyes were partially blocked by the hood, Plaintiff asked the student to brush back the hood.

23.    After the student did not respond to Plaintiff's request, Plaintiff gently brushed the student's hood back a few inches, believing the student's hijab was underneath.

24.    While lightly brushing back the hood itself, and not making contact with the student physically, Plaintiff noticed the student's hair.

25.    Plaintiff quickly unbrushed the hood and re-set the hood back to its prior placement.

26.    Plaintiff immediately apologized to the student and the classroom learning resumed. The entire interaction lasted mere seconds.

27.    After the event, the student's mother told the School's Principal that she understood what had happened with her daughter to be a simple misunderstanding.

**Members of the Public Falsely, And With Virulent Antisemitism, Allege That Plaintiff Removed The Student's Hijab Because Plaintiff is Jewish**

28.    Although the mother of the student stated to District officials that she understood that what had happened was a simple misunderstanding, she changed her story when she learned that Herman was Jewish and took to social media to spread a false narrative with antisemitic overtones, accusing Plaintiff of removing the student's hijab because Plaintiff is Jewish.

29.     For example, the student's mother posted the following posts on Facebook:

"TEACHER TOOK HER HIJAB OFF && SAID SHE CANT WEAR THAT IN SCHOOL…PUBLIC SCHOOL BTW."

""I      JUST      FOUND      OUT      THE      TEACHER      IS JEWISHHHHHHHHHH                                    😭😭😭
😩😩😩😩😩😩😩😩😩😩😩😩 . . . that's   why   I believe she did it now I'm furious.".

"SHE'S JEWISH OO SUS GOT A PROBLEM ON HER HANDS."

"*SHES JEWISH! Period TRY & CHANGE THAT! Imma print 1000 SHIRTS THAT SAYS HERMAN IS JEWISH! Imma keep saying that! Isn't she? A JEWSIH TEACHER THAT TAUGHT AT A JEWISH SCHOOL & A PUBLIC SCHOOL FOR 30 YEARS PULLED MY MUSLIM 7 YEAR OLD DAUGHTER HIJAB OFF HER HEAD CLAIMING IT WAS A HOODIES.. SHE"S JEWISH!*

*"SHE"S JEWISH! HERMAN IS JEWISH AM IM WRONG?! SHE"S JEWISH! A JEWISH TEACHER PULLED MY 7 YEAR OLD MUSLIM DAUGHTER HIJAB OFF HER HEAD IN FRONT OF HER CLASS. WHO ONCE TAUGHT AT A JEWISH SCHOOL ALSO TAUGHT AT A PUBLIC SCHOOL FOR 30 YEARS CLAIMING IT WAS A HOODIE"*

*"HERMAN IS JEWISH!!!!! IMMA PRINT 1000 SHIRTS SAYING HERMAN IS JEWISH &&& WHEN THE MUSLIMS COME OUT BCUZ IVE BEEN TRYING TO HOLD THEM BACK FROM FLOODING UR CITY. ILL BE SURE TO DROP TO DROP THE 1000 SHIRTS MASK && HATS OFF AT THE MASJID!"*[1]

30.     Additionally, third parties seized on the event as a cause celebre launching personal, inflammatory, untruthful and outlandish attacks against Plaintiff and her Jewish identity into digital space.

---

[1] Any typos contained within these quotes are contained within the original text.

31.     For example, Ibtihaj Muhammad, an Olympic fencer, who is an alumna of the SOMSD, and is famous for becoming the first woman to wear a hijab while competing for the United States in the Olympics and the first female Muslim-American athlete to earn a medal at the Olympics, published several scathing Facebook and Instagram posts regarding Herman to her 513,000 Facebook followers and 382,000 Instagram followers. A Change.org petition, entitled "*Fire the Teacher that Pulled off a Second Grader's Hijab Forcefully*!" repeats Muhammad's false accusations and calls for Herman to be fired and the comments include anti-Jewish rhetoric. This petition has garnered 41,007 signatures to date. Personal information about the Plaintiff was posted online that posed a threat to her security and wellbeing, causing her to request police protection from her local police department.

32.     The social media posts quickly made Plaintiff the focus of local and national media attention, with coverage online, in print and on television including NBC News, the New York Times and local social media forums.

33.     As a result of these social media posts, the public initiated threats toward Plaintiff.

34.     For example, the public made threats on social media, stating:

 "The next time I'm home in New Jersey, I'm, going to find out where this teacher resides, and I hope she has daughters....because I'm, going to take her clothes off in public. Im going to tell her daughter that her breasts are beautiful and she should expose them as much as possible."

"Take that Bi ÷ %# head off first thing in the Am."

**Instead of Protecting Plaintiff Against The Virulent Antisemitism, The SOMSD, Without Providing Plaintiff With Due Process or a Name-Clearing Hearing, Put Plaintiff on Administrative Leave, Which Has Persisted For Almost a Year**

35.     The day after the event, on October 7, as these threatening and antisemitic social media statements were being posted, two union representatives came to Plaintiff's classroom,

along with the Assistant Principal and another teacher set to take charge of Plaintiff's students, and told Plaintiff to leave. The other teacher took charge of the children, the Assistant Principal waved at Plaintiff to go and the two union representatives escorted her off the premises.

36.     Immediately thereafter, the SOMSD placed Plaintiff on administrative leave via letter and falsely accused her of having "abandoned...[her] teaching duties without... authorization from... [her] administrator." SOMSD informed the Plaintiff that her behavior constituted "AWOL" and would be "recorded and processed accordingly."

37.     The SOMSD placed Plaintiff on administrative leave without the benefit of a hearing or opportunity to defend herself against these false and scurrilous claims. It's blatantly false claim that Herman's behavior constituted "AWOL" exposed the SOMSD's rush to judgement and eagerness to besmirch the Plaintiff.

38.     The SOMSD's rush to judgment and apparent bare acceptance of the false and antisemitic accusations by the student's mother and third-parties was without cause and defies logic as Plaintiff was a veteran teacher with an exemplary record, who had, and has, a very credible, innocent, and non-discriminatory explanation for what happened.

39.     In fact, the SOMSD had ample reason to question the validity of the student's mother's accusations. In the days after the event, the student's mother had released written statements and made a public video in which she expressed the antisemitism underlying her claims and her hope to make money off of the event. The video also shows the mother coaching her daughter about what to say.

40.     Despite its knowledge that the October 6, 2021 event had been initially characterized by the child's mother as merely a misunderstanding – and not a discriminatory or other improper act – the SOMSD has wrongfully, and in violation of Plaintiff's constitutional

rights, kept Plaintiff on administrative leave and has not allowed her to go back into the classroom from that date through the present. Furthermore, even though the SOMSD knew that the mother's change of story was motivated by antisemitism and greed and that the Plaintiff was the subject of online harassment, SOMSD still referred the matter to local law enforcement, ultimately landing with the Essex County Prosecutor's Office ("ECPO") for an investigation.

41.     The SOMSD has maintained Plaintiff's administrative leave even though, on or about January 19, 2022, the ECPO concluded that it did not find enough evidence to move forward with criminal charges.

42.     The SOMSD has maintained Plaintiff's administrative leave despite the fact that on January 28, 2022, the mother of the student who was involved in the October 6, 2021 event showed up unannounced to Plaintiff's residence and stated that her daughter talks about Plaintiff all the time and that she loves Plaintiff and wishes Plaintiff was still her teacher. The mother went on to say that her daughter was fine in the beginning and that this was all a misunderstanding as her daughter blows things out of proportion.

43.     To this very day, the SOMSD has ostracized and isolated Plaintiff by keeping her on this administrative leave for almost a year and removing her from the classroom without providing Plaintiff a hearing or other due process to clear her name. Upon information and belief, instead, it has initiated a sorely belated, never concluded, after the fact, and suspect investigation, almost 12 months since the event at issue.

44.     Placing Plaintiff on administrative leave and removing her from the classroom, without even affording Plaintiff a hearing, encourages the public to further incorrectly assume that Plaintiff acted improperly and/or with malicious or discriminatory intentions.

45.     Further, Plaintiff was instructed in writing to not attend any District meetings or step foot on any school property after the October 6th event. Plaintiff's classroom was filled with many personal items and teaching resources which she purchased herself and she is not allowed to retrieve. In addition, the District informed the Plaintiff that her contact with the school should only be with or through the Office of Human Resources, completely and cruelly isolating her from her colleagues and friends at the school at a time of hostile and antisemitic online posts and media coverage.

46.     For almost a year, Plaintiff has suffered a protracted and indefinite leave, during which time she has been stripped of her ability to pursue her vocation, and has suffered the loss of fellowship/camaraderie with her colleagues, and the ostracization from her professional community, thereby significantly altering the terms, conditions, and privileges of her employment. The District expressed no interest in the Plaintiff's personal safety, despite the online threats, antisemitism and media furor and the fact that the Plaintiff was forced to ask the local Police Department for protection.

**The SOMSD Furthers Its Mistreatment of Plaintiff By Publishing Defamatory and Stigmatizing Statements about Plaintiff to the Public**

47.     Even as it pre-judged the event on October 6, 2021 and denied Plaintiff due process of law, the SOMSD compounded its unlawful mistreatment of Plaintiff by publishing defamatory and stigmatizing statements about Plaintiff to the public.

48.     For example, on October 7, 2021, the District issued a statement to the public about the event highlighting the District's anti-bias and anti-racism training for all educators, thereby insinuating that Plaintiff's actions were discriminatory or motivated by religious or other bias.

10

49.     Additionally, on October 11, 2021, the District issued a statement, which included a sentence stating, "We are hopeful and all agree that the alleged actions of one employee should not condemn an entire community", thereby further implying and tacitly agreeing with the allegation that Plaintiff had committed an act deserving of condemnation.

50.     The October 11th statement contained website links that the SOMSD parents could use to discuss "this situation" with their children and family. Specifically, it included a link (https://www.nctsn.org/sites/default/files/resources/fact-sheet/talking_with_your_children_about_islamophobia_and_hate-based_violence.pdf) to a fact sheet about "Talking with your Children about Islamophobia and Hate-Based Violence."

51.     By including this link in a statement to the SOMSD community, the SOMSD endorsed the student's mother's/other third parties' false and antisemitic accusations of Islamophobia, which the SOMSD knew were false.

52.     One week later, in an October 18, 2021 statement by BOE President Thair Joshua, the SOMSD framed Plaintiff as the bad actor. The statement focused on staff accountability, thereby impugning Plaintiff. Further, the statement focused only on student well-being, thereby disregarding Plaintiff's well-being entirely. Conspicuously absent from this statement was a condemnation of hateful and antisemitic threats to Plaintiff's well-being, which SOMSD was well aware of because concerned residents had written to SOMSD about the antisemitism and since Ibtihaj Muhammad had spread the sensationalist rendering of the event as a fait accompli to hundreds of thousands of people imploring them to express their outrage to the Seth Boyden Principal and the SOMSD Superintendent and providing the public with phone number and email addresses of these two leaders.

**The SOMSD Conspires With Fiedeldey To Further Defame Plaintiff**

53.     Upon information and belief, immediately after the disputed event, and as a "knee jerk" reaction to the disputed allegations lodged against Plaintiff, the District asked Fiedeldey to include the incident as part of the "implicit bias", "anti-bias", and "diversity" training session which was scheduled for October 12, 2021.

54.     Evidently, the District concluded, despite no investigation of the event, and without affording a due process hearing to Plaintiff, that these one-sided allegations warranted immediate action, despite the clear bias of her accusers and the District's initial information that the brief exchange between Plaintiff and her second-grade student was a misunderstanding.

55.     Moreover, it is apparent that the District, cowered by the controversy raging in the media and on the internet, pre-judged the October 6th interaction and without any factual basis or investigation sought to act swiftly to stem what it assumed and/or mis-perceived to be public outrage.

56.     In doing so, the District enlisted Fiedeldey to add the October 6th incident to the "anti-bias" training as part of its efforts to display that it had the controversy under control.

57.     The actions of the District in asking Fiedeldey to add the October 6th incident to its presentation at that time and for that purpose pandered to the ill-founded allegations of one segment of a biased public and parent groups and was done despite the fact that the District knew that the allegations were false.

58.     Once asked to include the October 6th incident in its "anti-bias" and "diversity" training session, Fiedeldey, like the District, improperly acted on the same false assumptions underlying the allegations against Plaintiff.

59.     Fiedeldey wrongfully relied upon these false allegations, with actual knowledge that the statements were false, with reckless disregard for their truth, and/or negligently and without regard to how the timing and content of the training program would defame Plaintiff.

60.      During the October 12, 2021, training session, Fiedeldey's presenter(s) displayed and re-published in a slide presentation at least one defamatory headline about the October 6 event, using the event as an example of the sort of "bias" and "implicit bias" about which the District purported to be concerned and sought to abate.

61.     Essentially, the disputed allegations lodged against Plaintiff were used as an example of what not to do when matters of "bias" and "implicit bias" are the subject.

62.     By doing so, in the context of the timing and content of the program in the immediate wake of the allegations against Plaintiff, Fiedeldey's presentation effectively "connected the dots" to those in attendance to Plaintiff personally.

63.     Given its timing and content, Fiedeldey's presentation clearly impugned Plaintiff's reputation and damaged her indelibly in the eyes of her professional colleagues throughout the District and beyond.

64.     The bias and imbalance in Fiedeldey's presentation was even more egregious because it ignored the fact that, at the same time some members of the public were alleging anti-Muslim bias and Islamophobia, others in social media platforms were hurling contemptible antisemitic epithets and threats at Plaintiff, who is Jewish.

65.     Despite its knowledge of these antisemitic threats and epithets, Fiedeldey failed to present a balanced program.

66.     The effect of this one-sided presentation was to further reinforce the false premise that Plaintiff had engaged in an unlawful act of religious bias, as opposed to being herself a victim of horrific and violent antisemitic social media posts and threats at the same time.

**The SOMSD Was Quick To Denounce An Unfounded Allegation of Islamophobia Without Any Investigation But Has Remained Silent While As Its Longstanding Respected Employee Has Been The Victim of Severe and Violent Antisemitism.**

67.     While quick to castigate in its publications those who were alleged to have exhibited Islamophobia and Anti-Muslim bias, the SOMSD did not similarly denounce the antisemitism proliferated on the internet targeting Plaintiff's faith and identity.

68.     Although both Plaintiff, the student, and the student's parents are members of the same school community, and Plaintiff and the student were witnesses to the same event, the difference between how the SOMSD treated them is palpable.

69.     This difference in treatment runs counter to the SOMSD's pronouncement that, "The values of our District and community have always centered around diversity, equity, and respect regarding our differences. Our goal is to be inclusive and to provide an environment of safety where both our students and staff can thrive irrespective of their race, gender, religious affiliation, sexual identity, or socioeconomic status."

70.     Although the District professed to want to treat all members of the school community equally and provide a safe environment to both students and staff, it apparently did not mean the Jewish members.

71.     The SOMSD's grossly disparate treatment of an unfounded and disputed allegation of Islamophobia and Anti-Muslim bias compared to its complete silence and inaction in the face of antisemitic and violent threats against its longstanding employee is unconscionable,

unlawful and demonstrates religious, national origin, and/or ethnicity bias against the Plaintiff by the SOMSD.

72.     Upon information and belief, the SOMSD has placed Plaintiff on administrative leave, without even allowing her a hearing, and has failed to condemn the antisemitism lodged at its long-tenured employee, not because it believes that Plaintiff did anything wrong or discriminatory, but because it seeks to favor one religion, race, and/or ethnic constituency over another.

73.     It is clear that for the SOMSD, antisemitic hate is not worthy of condemnation, while a nonsensical allegation of Islamophobia, that was admitted to have been a misunderstanding, that defies logic, and that is fueled by antisemitism is worthy of condemnation without even providing Plaintiff an opportunity to tell her side of the story.

74.     As a result of Defendant SOMSD's unlawful conduct, Plaintiff has suffered and continues to suffer significant mental anguish, physical distress, untold damage to her personal and professional reputation, damage to her ability to earn a living, and other financial and personal damages.

75.     Plaintiff filed a Tort Claim Notice with the SOMSD on September 22, 2022.

**COUNT ONE**
**Violation of Due Process Under the Fourteenth Amendment to the U.S.**
**Constitution**
**(42 U.S.C. § 1983)**
**(Against Defendant SOMSD)**

76.     Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

77.     The Due Process Clause of the Fourteenth Amendment to the U.S.

Constitution mandates that no person shall be deprived of property without Due Process of Law, and thus confers upon Plaintiff protection from arbitrary governmental action.

78.     Plaintiff, a tenured teacher, has a protected property interest in her position, and is entitled to due process before she can be deprived of her tenured position.

79.     Defendant SOMSD  deprived Plaintiff of the rights secured to her by the United State Constitution by placing Plaintiff on administrative leave without a hearing or other due process.

80.     In depriving Plaintiff of these rights, the SOMSD acted under color of state law. This deprivation under color of state law is actionable under, and may be redressed by, 42 U.S.C. § 1983.

81.     All actions referred to herein taken by the SOMSD were intentional, malicious, willful, wanton, and in gross and reckless disregard of Plaintiff's constitutional rights.

82.     As a direct and proximate results of the SOMSD's unconstitutional and illegal conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SOMSD:

(i)     Awarding Plaintiff damages, including but not limited to, compensatory, and punitive damages;

(ii)    Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees, including but not limited to all recovery permitted by 42 U.S.C. § 1988;

(iii)   Awarding Plaintiff prejudgment interest; and

(iv)    Awarding such other and further relief as the Court may deem just and equitable.

<u>**COUNT TWO**</u>
<u>**Violation of Due Process Under Article I, Paragraph 1 of the New**</u>
<u>**Jersey State Constitution**</u>
**(New Jersey Civil Rights Act, <u>N.J.S.A.</u> 10:6-2)**
**(Against Defendant SOMSD)**

83.     Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

84.     The Due Process Clause of Article 1, Paragraph 1 of the New Jersey Constitution protects New Jersey's citizens from being deprived of their property without Due Process of Law and thus confers upon Plaintiff protection from   arbitrary governmental action.

85.     Plaintiff's tenured teaching position is a property interest of Plaintiff's.

86.     By stripping her of her tenured teaching position and placing her on administrative leave,  without any sort of due process, Defendant SOMSD deprived Plaintiff of the rights guaranteed to her by the New Jersey State Constitution.

87.     In depriving Plaintiff of these rights, Defendant SOMSD acted under color of state law.

88.     All actions referred to herein taken by the SOMSD were intentional, malicious, willful, wanton, and in gross and reckless disregard of Plaintiff's constitutional rights.

89.     As a direct and proximate results of the SOMSD's unconstitutional and illegal conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SOMSD:

(i)     Awarding Plaintiff damages, including but not limited to, compensatory, and punitive damages;

(ii)    Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees;

(iii)   Awarding Plaintiff prejudgment interest; and

(iv)    Awarding such other and further relief as the Court may deem just and equitable.

**COUNT THREE**
**Violation of to Due Process Under the Fourteenth Amendment to the U.S. Constitution**

**(42 U.S.C. § 1983)**
**(Against Defendant SOMSD)**

90.     Plaintiff hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs.

91.     As a teacher with a tenured position, Plaintiff has a legitimate expectation of retaining her tenured teaching position.

92.     The SOMSD published statements to the public that were untrue.

93.     The SOMSD deprived, and is continuing to deprive, Plaintiff of the rights secured to her by the United States Constitution.

94.     The SOMSD violated and is continuing to violate, Plaintiff's due process rights, in particular her liberty interest in her reputation, as guaranteed by the Fourteenth Amendment to the United States Constitution.

95.     Defendant SOMSD deprived Plaintiff of the ability to perform her tenured teaching position and has therefore deprived Plaintiff of her protected property interest in her tenure.

96.     In depriving Plaintiff of these rights, Defendant SOMSD acted under color of state law.

97.     All actions referred to herein taken by the SOMSD were intentional, malicious, willful, wanton, and in gross and reckless disregard of Plaintiff's constitutional rights.

98.     As a direct and proximate results of the SOMSD's unconstitutional and illegal conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SOMSD:

(i)     Awarding Plaintiff damages, including but not limited to, compensatory, and punitive damages;

18

    (ii)      Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees, including but not limited to all recovery permitted by 42 U.S.C. § 1988;

    (iii)    Awarding Plaintiff prejudgment interest; and

    (iv)    Awarding such other and further relief as the Court may deem just and equitable.

**COUNT FOUR**
**Violation of Due Process Under Article I, Paragraph 1 of the New**
**Jersey State Constitution**
**(New Jersey Civil Rights Act, N.J.S.A. 10:6-2)**
**(Against Defendant SOMSD)**

99.    Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

100.    The SOMSD published statements about Plaintiff that were false.

101.    Defendant SOMSD acted deliberately, with reckless disregard for the truth, and/or negligently in publishing these statements.

102.    Under the New Jersey Constitution, Plaintiff has a protected liberty interest in her reputation.

103.    Defendant SOMSD acted to harm Plaintiff's reputation, violating her liberty interest protected under the State Constitution.

104.    All actions referred to herein taken by the SOMSD were intentional, malicious, willful, wanton, and in gross and reckless disregard of Plaintiff's constitutional rights.

105.    As a direct and proximate results of the SOMSD's unconstitutional and illegal conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SOMSD:

    (i)      Awarding Plaintiff damages, including but not limited to, compensatory, and punitive damages;

19

(ii)     Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees;

(iii)    Awarding Plaintiff prejudgment interest; and

(iv)    Awarding such other and further relief as the Court may deem just and equitable.

**COUNT FIVE**
**Violation of Equal Protection Clause of the Fourteenth Amendment to the U.S.**
**Constitution**
**(42 U.S.C. § 1983)**
**(Against Defendant SOMSD)**

106.    Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

107.    The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution mandates that individuals in similar situations be treated equally by the law.

108.    Plaintiff is a member of a protected class on the basis of her religion and/or national origin and/or ethnicity.

109.    Defendant SOMSD  deprived Plaintiff of the rights secured to her by the United States Constitution by denying her equal terms and conditions and treating her disparately because of her Jewish religion, national origin and/or ethnicity.

110.    In the weeks and months that followed the events that transpired on October 6, 2021, after being notified of virulently antisemitic social media posts about Plaintiff, and threats to Plaintiff's physical safety, the SOMSD did nothing. This markedly different response than the SOMSD's response to the concern over Islamophobia demonstrates disparate treatment on religion, national origin, and/or ethnic identity.

111.    Plaintiff, who is Jewish, was subjected to harassment and threats which were antisemitic in nature. Instead of protecting Plaintiff from this antisemitic harassment, or even listening to Plaintiff's side of the story through a hearing process, Defendant automatically

credited the student and her parents' antisemitic version of the event.

112.    The SOMSD has placed Plaintiff on administrative leave and, upon information and belief, has not condemned the antisemitism and threats directed at Plaintiff, not because it believes that Plaintiff did anything wrong or discriminatory, but because it favored one religious, racial, ethnic, and/or national origin group over the other.

113.    In depriving Plaintiff of these rights, the SOMSD acted under color of state law. This deprivation under color of state law is actionable under, and may be redressed by, 42 U.S.C. § 1983.

114.    All actions referred to herein taken by the SOMSD were intentional, malicious, willful, wanton, and in gross and reckless disregard of Plaintiff's constitutional rights.

115.    As a direct and proximate results of the SOMSD's unconstitutional and illegal conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SOMSD:

(i)     Awarding Plaintiff damages, including but not limited to, compensatory, and punitive damages;

(ii)    Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees, including but not limited to all recovery permitted by 42 U.S.C. § 1988;

(iii)   Awarding Plaintiff prejudgment interest; and

(iv)    Awarding such other and further relief as the Court may deem just and equitable.

**COUNT SIX**
**Violation of Equal Protection Under Article I, Paragraph 1 of the New Jersey Constitution**
**(New Jersey Civil Rights Act, N.J.S.A. 10:6-2)**
**(Against Defendant SOMSD)**

116.    Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

117.    Article I, Paragraph 1 of the New Jersey Constitution requires equal protection of the laws. Such protection is deemed an "unalienable right".

118.    Plaintiff is a member of a protected class on the basis of her religion and/or national origin and/or ethnicity.

119.    Defendant SOMSD  deprived Plaintiff of the rights secured to her by the New Jersey Constitution by denying her equal terms and conditions and treating her disparately because of her Jewish religion, national origin and/or ethnicity.

120.    In the weeks and months that followed the events that transpired on October 6, 2021, after being notified of virulently antisemitic social media posts about Plaintiff, and threats to Plaintiff's physical safety, the SOMSD did nothing. This markedly different response than the SOMSD's response to the concern over Islamophobia demonstrates disparate treatment on religious, national origin, and/or ethnic identity.

121.    Plaintiff, who is Jewish, was subjected to harassment and threats which were antisemitic in nature. Instead of protecting Herman from this antisemitic harassment, or even listening to Plaintiff's side of the story through a hearing process, Defendant automatically credited the student and her parents' antisemitic version of the event.

122.    The SOMSD has placed Plaintiff on administrative leave and, upon information and belief, has not condemned the antisemitism and threats directed at Plaintiff, not because it believes that Plaintiff did anything wrong or discriminatory, but because it favored one religious, racial, ethnic, and/or national origin group over the other.

123.    In depriving Plaintiff of these rights, the SOMSD acted under color of state law.

124.    All actions referred to herein taken by the SOMSD were intentional, malicious, willful, wanton, and in gross and reckless disregard of Plaintiff's constitutional rights.

125.    As a direct and proximate results of the SOMSD's unconstitutional and illegal conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SOMSD:

(i)      Awarding Plaintiff damages, including but not limited to, compensatory, and punitive damages;

(ii)     Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees;

(iii)    Awarding Plaintiff prejudgment interest; and

(iv)     Awarding such other and further relief as the Court may deem just and equitable.

## COUNT SEVEN
**(Violation of N.J. Law Against Discrimination – N.J.S.A. 10:5-1, et seq.)**
**(Against Defendant SOMSD)**

126.    Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

127.    Given Plaintiff's Jewish religion, and/or national origin, and/or ethnic identity, Plaintiff is a member of a legally protected class under the NJLAD.

128.    Defendant SOMSD discriminated against Plaintiff with respect to the terms and conditions of her employment because of her religion, and/or national origin, and/or ethnic identity.

129.    Defendant SOMSD discriminated against Plaintiff by refusing to take action to protect her from virulent antisemitic social media posts and threats from the student's parents and others, and by failing to even hear Plaintiff's side of the story through a hearing.

130.    Plaintiff was subjected to harassment and threats which were antisemitic in nature, the harassment was unwelcome, and the harassment was sufficiently severe or pervasive to create an abusive work environment.

131.    Instead of protecting Herman from this antisemitic harassment, or even listening to Plaintiff's side of the story, Plaintiff was placed for almost a year, on a protracted and indefinite leave, during which time she has been stripped from her ability to pursue her vocation, and has suffered the loss of fellowship/camaraderie with her colleagues, and the ostracization from her professional community, thereby significantly altering the terms, conditions, and privileges of her employment.

132.    The markedly different response from the SOMSD with respect to Islamophobia than with respect to antisemitism, demonstrates disparate treatment based on religion and/or national origin and/or ethnicity.

133.    Crediting the student's account of the event, over Plaintiff's – who is Jewish - version of the events, without even conducting a hearing, constitutes disparate treatment which evidences discrimination.

134.    Had Herman not have been Jewish, she would have received more assistance from the SOMSD and her version of the events would have been afforded more credibility.

135.    The SOMSD's actions were motivated in whole or in part by animus toward Plaintiff's religion and/or national origin, and/or ethnicity and a desire to favor a different religion, national origin, ethnicity, and/or race.

136.    As a direct and proximate result of the SOMSD's unlawful discriminatory conduct in violation of the N.J. Law Against Discrimination, Plaintiff has suffered and will continue to suffer financial and economic damages as well as severe mental anguish and emotional distress including but not limited to anxiety, humiliation, stress and emotional pain and suffering.

**WHEREFORE**, Plaintiff demands judgment against Defendant SOMSD:

(i)     Awarding Plaintiff damages, including but not limited to, compensatory, direct, consequential, back pay, front pay, and punitive damages;

(ii)    Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees;

(iii)   Awarding Plaintiff prejudgment interest; and

(iv)    Awarding such other and further relief as the Court may deem just and equitable.

## COUNT EIGHT
### (Defamation and/or Defamation Per Se)
### (Against All Defendants)

137.    Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

138.    Defendant SOMSD and Defendant Fiedeldey published statements to third-parties regarding Plaintiff and the October 6, 2021 event which contained false and unsubstantiated allegations against Plaintiff.

139.    Defendants' false and defamatory statements published to third-parties were made by Defendants with actual knowledge that the statements were false, with reckless disregard for their truth, and/or negligently and without regard to how the timing and content of the training program would defame Plaintiff.

140.    The aforementioned false and defamatory statements made by the Defendants constitute defamation and/or defamation *per se* because they were and still are about Plaintiff and relating to Plaintiff, were knowingly and/or with recklessness and/or malice and/or negligently published to third parties, falsely impugn, attack, malign, and destroy Plaintiff's professional reputation as a teacher, her reputation for fitness and trustworthiness as a teacher, her character, her honesty, her integrity, her tolerance, her mental state, and, moreover, because these false and defamatory statements accuse Plaintiff of engaging in criminal behavior and portray Plaintiff as being a bigot, a racist, and generally as a disreputable and loathsome person.

141.    Defendants' defamatory statements were not subject to a privilege that rendered their publication lawful.

142.    Defendants' false statement regarding Plaintiff and the October 6th event have caused reputational harm and mental anguish to Plaintiff.

143.    As a direct and proximate result of Defendants' defamation, Plaintiff has suffered damage to her reputation, economic loss, damage to her career path, and loss of earning and other employment benefits, and other compensatory damages, in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

(i)     Awarding Plaintiff damages, including but not limited to, compensatory, direct, consequential, and punitive damages;

(ii)    Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees;

(iii)   Awarding Plaintiff prejudgment interest; and

(iv)    Awarding such other and further relief as the Court may deem just and equitable.

## COUNT NINE
### (False Light Invasion of Privacy)
**(All Defendants)**

144.    Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

145.    Defendants SOMSD and Fiedeldey published information or material that showed Plaintiff in a false light.

146.    The false light created by the publication would be highly offensive to a reasonable person in Plaintiff's position.

147.     Defendants SOMSD and Fiedeldey had knowledge, acted with reckless disregard for the truth, and/or were negligent in determining the truth of the information and/or whether the publication would create a false impression about Plaintiff.

148.     As a direct and proximate result of Defendants' wrongful actions, Plaintiff has suffered damage to her reputation, economic loss, damage to her career path, and loss of earning and other employment benefits, and other compensatory damages, in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

(v)     Awarding Plaintiff damages, including but not limited to, compensatory, direct, consequential, and punitive damages;

(vi)     Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees;

(vii)     Awarding Plaintiff prejudgment interest; and

(viii)     Awarding such other and further relief as the Court may deem just and equitable.

## COUNT TEN
### (Civil Conspiracy)
### (Against All Defendants)

149.     Plaintiff hereby incorporates by reference each of the preceding allegations as though each were specifically set forth at length herein.

150.     Defendants acted in concert to commit the unlawful act of defamation described herein.

151.     The principal element of the agreement, whether express or tacit, between the Defendants was to defame Plaintiff.

152.     Defendants took overt actions in furtherance of the conspiracy.

153.     As a result, Plaintiff suffered damages in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

(i)     Awarding Plaintiff damages, including but not limited to, compensatory, direct, consequential, and punitive damages;

(ii)    Awarding Plaintiff fees and costs of suit, including reasonable attorneys' fees;

(iii)   Awarding Plaintiff prejudgment interest; and

(iv)    Awarding such other and further relief as the Court may deem just and equitable.

**GENOVA BURNS LLC**
*Attorneys for Plaintiff,*
*Tamar Herman*

*s/Angelo J. Genova*
ANGELO J. GENOVA

Dated: October 4, 2022

## DEMAND FOR JURY TRIAL

Plaintiff, Tamar Herman, hereby demands a trial by jury of all issues so triable.

**GENOVA BURNS LLC**
*Attorneys for Plaintiff,*
*Tamar Herman*

*s/Angelo J. Genova*
ANGELO J. GENOVA

28

## <u>LOCAL CIVIL RULE 11.2</u>

I, Angelo J. Genova, Esq. hereby certify pursuant to Local Civil Rule 11.2, that the above-captioned matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

**GENOVA BURNS LLC**

Dated: October 4, 2022

By: <u>*s/Angelo J. Genova*</u>
Angelo J. Genova, Esq.
Lauren W. Gershuny, Esq.
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777
*Attorneys for Plaintiff, Tamar Herman*

16773889v1 (25020.002)