**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

TAMAR HERMAN,

        Plaintiff,

    v.

SOUTH ORANGE-MAPLEWOOD
SCHOOL DISTRICT BOARD OF
EDUCATION, AND FIEDELDEY
CONSULTING, LLC,

        Defendants.

**CIVIL ACTION NO.: 2:22-cv-05873-JMV-MAH**

<u>CIVIL ACTION</u>

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT SOUTH ORANGE-MAPLEWOOD SCHOOL DISTRICT BOARD OF EDUCATION's MOTION TO DISMISS**

---

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777
*Attorneys for Plaintiff,*
*Tamar Herman*

<u>**Of Counsel and on the Brief**</u>:
Angelo J. Genova, Esq.
Lauren W. Gershuny, Esq.

<u>**On the Brief**</u>
Lauren W. Gershuny, Esq.
Romie Michel, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ................................................................................ 2

STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)..................... 6

LEGAL ARGUMENT ...................................................................................... 8

    I.    PLAINTIFF HAS STATED COGNIZABLE CLAIMS OF VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE NEW JERSEY AND FEDERAL CONSTITUTIONS. ................................ 8

    II.    PLAINTIFF HAS STATED A VALID FEDERAL STIGMA-PLUS CLAIM AGAINST THE SOMSD. ......................... 13

    III.    PLAINTIFF HAS STATED A COGNIZABLE STIGMA-BASED CLAIM UNDER THE NEW JERSEY CONSTITUION.................... 19

    IV.    PLAINTIFF HAS SUFFICIENTLY PLED EQUAL PROTECTION CLAIMS UNDER THE FEDERAL AND STATE CONSTITUTIONS. .............. 21

    V.    PLAINTIFF'S COMMON LAW TORT CLAIMS ARE NOT BARRED BY THE TORT CLAIMS ACT NOTICE PROVISIONS. ........................................... 25

    VI.    PLAINTIFF'S DEFAMATION AND FALSE LIGHT CLAIMS ARE NOT BARRED AS A MATTER OF LAW BY N.J.S.A. § 59:2-10. ............................. 26

CONCLUSION.................................................................................................. 29

**TABLE OF AUTHORITIES**

**CASES**

Arturi v. Tiebie,
  73 N.J. Super. 217 (App. Div. 1962) ........................ 16

Ashcroft v. Iqbal,
  556 U.S. 662(2009) ...................................... 7, 18

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ................................ 7, 10, 14

Blueprint Cap. Advisors, LLC v. Murphy,
  2022 WL 17887229(D.N.J. Dec. 23, 2022) ..................... 25

Brown v. Montgomery County,
  470 F. App'x 87(3d Cir. 2012) ............................... 16

Celestine v. Foley,
  2010 WL 5186145(D.N.J. Dec. 14, 2010) ...................... 24

City of Cleburne v. Cleburne Living Ctr.,
  473 U.S. 432 (1985) ....................................... 22

Connelly v. Lane Const. Corp.,
  809 F.3d 780(3d Cir. 2016) ................................. 8

D'Costa v. Plaza,
  2017 WL 2213141(D.N.J. May 18, 2007) ...................... 25

DeAngelis v. Hill,
  180 N.J. 1 (2004) .................................. 16, 26, 28

Dijkstra v. Westerink,
  168 N.J. Super. 128 (App. Div. 1979) ...................... 17

Doe v. Poritz,
  142 N.J. 1 (1995) ...................................... 9, 20

Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,
  472 U.S. 749(1985) ........................................ 27

Fowler v. UPMC Shadyside,
  578 F.3d 203 (3d Cir. 2009) ................................ 8

Gould Elec. Inc. v. United States,
  220 F.3d 169 (3d Cir. 2000) ................................ 7

Greenberg v. Kimmelman,
    99 N.J. 552 (1985) ......................................... 22

Hassoun v. Cimmino,
    126 F. Supp. 2d 353 (D.N.J. 2000) ...................... 23, 24

Hedges v. United States,
    404 F.3d 744 (3d Cir. 2005) ............................. 2, 7

Hill v. Borough of Kutztown,
    455 F.3d 225(3d Cir. 2006) ................................ 13

Kuhar v. Greensburg-Salem School District,
    616 F.2d 676 (3d Cir. 1980) ............................... 23

Minor v. Dilks,
    2022 WL 3369707(D.N.J. Aug. 16, 2022) ..................... 24

Moran v. Southern Regional High School District Board of
    Education,
    2006 WL 436201(D.N.J. Feb. 17, 2006) ..................... 11

Neafie v. Hoboken Printing & Publishing Co.,
    75 N.J.L. 564(E. & A.1907) ................................ 20

Neitzke v. Williams,
    490 U.S. 319 (1989) ........................................ 7

New York Times Co. v. Sullivan,
    376 U.S. 254(1964) ........................................ 26

Phillips v. County of Allegheny,
    515 F.3d 224(3d Cir. 2008) ............................. 12, 19

Russo v. Nagel,
    358 N.J. Super. 254(App. Div. 2003) .................... 16, 17

Scelfo v. Rutgers Univ.,
    116 N.J. Super. 403 (Law Div. 1971) ...................... 16

Schiavone Const. Co. v. Time, Inc.,
    619 F. Supp. 684 (D.N.J. 1985) ......................... 17, 18

Senna v. Florimont,
    196 N.J. 469(2008) ........................................ 27

Verna v. Links at Valleybrook Neighborhood Ass'n, Inc.,
    371 N.J. Super. 77(App. Div. 2004) ....................... 26

<u>Weller v. Home News Publishing Co.</u>,
  112 N.J. Super. 502 (L. Div. 1970) .......................... 18

<u>Young v. New Sewickley Twp.</u>,
  160 Fed. Appx. 263 (3d Cir. 2005) .......................... 22

**<u>STATUTES</u>**

N.J.S.A. 59:2-10........................................... 26, 28

N.J.S.A. 59:8-3............................................. 25

**<u>RULES</u>**

Rule 12(b)(6)........................................... passim

## PRELIMINARY STATEMENT

Even a cursory review of the partial motion to dismiss filed by Defendant South Orange Maplewood School District's ("SOMSD" or "Defendant") reveals that the motion disregards the firmly established standards for deciding such motions pursuant to Federal Rule 12(b)(6).  Under those standards, the Court must accept Plaintiff's Tamar Herman ("Plaintiff" or "Herman") factual allegations as true and give Plaintiff all favorable inferences of fact when determining the sufficiency of her Complaint.  Although the SOMSD technically cites to the Complaint when reciting its version of the facts, it plays fast and loose with the facts alleged in the Complaint, casting doubt on Plaintiff's allegations instead of assuming their truth; adding facts not in the Complaint; and generally portraying the Plaintiff as someone not worthy of belief.  The prejudgment reflected in the Moving Brief is hardly surprising: it largely mirrors the bias and prejudgment exhibited by the SOMSD in its response to the incident of October 6, 2021 and its aftermath, a posture which has egregiously harmed Plaintiff and ultimately forced Plaintiff to bring the Complaint the SOMSD now seeks to partially dismiss.  The SOMSD's deviation from the applicable motion standard under Rule 12(b)(6) alone should result in denial of its motion.

In addition, the motion is fatally flawed because it improperly seeks to prematurely litigate the merits of numerous claims, all to avoid the rigors of litigation, the truth-seeking

devices of discovery, and, in the end, to prevent Plaintiff from having her day in court.  Questions such as whether the statements published by the SOMSD about the Plaintiff were false and defamatory, or whether Plaintiff was in fact treated disparately from other similarly situated persons, or even what standard should apply to Plaintiff's reputational and defamation-based claims, are all fact-sensitive matters that cannot be decided at this initial stage of the litigation on the face of a pleading, without the benefit of discovery.  When dispositive relief has been obtained by defendants on such claims through motion practice, it invariably has been only on motions for summary judgment, after the court has had the benefit of the development of a factual record capable of review.

In short, for the reasons that follow, Plaintiff's Complaint states valid claims upon which relief can be granted against the SOMSD with respect to each claim that is the subject of the pending motion.  As a result, the Court should deny Defendant's partial motion to dismiss the Complaint and allow Plaintiff to proceed with all of her claims for relief against Defendant.

## STATEMENT OF FACTS

Plaintiff pled the following facts against Defendant, which the Court must accept as true for purposes of the pending motion to dismiss:[1]

---

[1] See Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

For approximately 20 years, Plaintiff has been a devoted teacher, who obtained the status of tenure, at the Seth Boyden Elementary School located in the SOMSD, one of New Jersey's most diverse schools. (Complaint, ¶ 2) Throughout her tenure as an educator, Plaintiff has consistently incorporated diverse faiths, cultures, traditions, and backgrounds in her teaching and curriculum and has valued the same. (Id. at ¶ 3) Prior to the event complained of, Plaintiff had never received or been the subject of a complaint regarding her alleged lack of sensitivity to any student's background, ethnicity, national origin, race, religion, or any other similar legally-protected category. (Id. at ¶ 15).

On October 6, 2021, while class was in session, Plaintiff noticed that one of her second-grade students was wearing a hood that blocked the child's eyes (as well as a Covid-19 mask which blocked her face). (Id. at ¶ 18). While Plaintiff was aware that this student regularly wore a form-fitting hijab, the article of clothing Plaintiff witnessed that day did not resemble the hijab that this student wore every day prior to the day in question. (Id at ¶ 20). Accordingly, Plaintiff believed in good faith that the student's hijab was under this hood. (Id. at ¶ 21). Intending to encourage the student to engage in her schoolwork as her eyes were partially blocked by the hood, Plaintiff asked the student to brush back the hood. (Id. at ¶ 22). After the student did not respond to Plaintiff's request, Plaintiff gently brushed the student's hood

3

back a few inches, believing the student's hijab was underneath. (Id. at ¶ 23). While lightly brushing back the hood itself, and not making contact with the student physically, Plaintiff noticed the student's hair. (Id. at ¶ 24. Plaintiff quickly unbrushed the hood and re-set the hood back to its prior placement. (Id. at ¶ 25).

After the event, the student's mother told the School's Principal that she understood what had happened with her daughter to be a simple misunderstanding. (Id. at ¶ 27). Although the mother of the student stated to District officials that she understood that what had happened was a simple misunderstanding, she changed her story when she learned that Herman was Jewish. (Id. at ¶ 28). In turn, she took to social media to spread a false narrative with antisemitic overtones, accusing Plaintiff of removing the student's hijab because Plaintiff is Jewish. Third parties joined in on these on-line antisemitic attacks and initiated threats toward Plaintiff. (Id. at ¶ 29 - 34).

The day after the event, on October 7, as these threatening and antisemitic social media statements were being posted, two union representatives came to Plaintiff's classroom and told Plaintiff to leave. (Id. at ¶ 35). Immediately thereafter, Defendant placed Plaintiff on administrative leave without the benefit of a hearing or opportunity to defend herself against these false and scurrilous claims. (Id. at ¶ 36). Despite its knowledge

that the October 6, 2021 event had been initially characterized by the child's mother as merely a misunderstanding – and not a discriminatory or other improper act – Defendant has wrongfully, and in violation of Plaintiff's constitutional rights, kept Plaintiff on administrative leave and has not allowed her to go back into the classroom from that date through the present. (Id. at ¶ 40).

Even as it pre-judged the event on October 6, 2021 and denied Plaintiff due process of law, Defendant compounded its unlawful mistreatment of Plaintiff by publishing defamatory and stigmatizing statements about Plaintiff to the public. (Id. at ¶ 47). For example, on October 7, 2021, the District issued a statement to the public about the event highlighting the District's anti-bias and anti-racism training for all educators, thereby insinuating that Plaintiff's actions were discriminatory or motivated by religious or other bias. (Id. at ¶ 48). Additionally, on October 11, 2021, the District issued a statement, which included a sentence stating, "We are hopeful and all agree that the alleged actions of one employee should not condemn an entire community", thereby further implying and tacitly agreeing with the allegation that Plaintiff had committed an act deserving of condemnation. (Id. at ¶ 49). The October 11th statement contained website links that the SOMSD parents could use to discuss "this situation" with their children and family. (Id. at ¶ 50).

5

Specifically, it included a link to a fact sheet about "Talking with your Children about Islamophobia and Hate-Based Violence." (Id. at ¶ 50). By including this link in a statement to the SOMSD community, the SOMSD endorsed the student's mother's/other third parties' false and antisemitic accusations of Islamophobia, which the SOMSD knew were false. (Id. at ¶ 51). One week later, in an October 18, 2021 statement by BOE President Thair Joshua, the SOMSD framed Plaintiff as the bad actor. (Id. at ¶ 52). The statement focused on staff accountability, thereby impugning Plaintiff. (Id. at ¶ 52).

Plaintiff seeks damages for: Defendant's Federal and State Constitutional violations (Counts 1-6);[2] violations of the New Jersey Law Against Discrimination ("NJLAD") (Count 7) (which is not the subject of Defendant's motion); defamation/defamation per se (Count 8); false light invasion of privacy (Count 9); and civil conspiracy (Count 10).

### STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)

A defendant seeking dismissal of an action at the initial pleading stage has a high burden to meet.  When deciding such a motion, "the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they

---

[2] Plaintiff's federal procedural due process claim is not the subject of Defendant's motion.

state a claim as a matter of law." <u>Hedges</u>, 404 F.3d at 750 (quoting <u>Gould Elec. Inc. v. United States</u>, 220 F.3d 169, 178 (3d Cir. 2000)).  The motion must be decided upon the facts that are pled, not upon whether the court believes those facts, or whether the plaintiff could ever prove the facts as alleged.  See <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.")  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

Except for a few claims that are required to be plead with specificity, the Federal Rules require only notice pleading, which necessitates the plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought". Fed. R. Civ. P 8(a)(2) and (3).  Thus, "a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." <u>Twombly</u>, 550 U.S. at 555.  Instead, after assuming the truth of the factual allegations in the Complaint, the court decides if "those '[f]actual allegations [are] enough to raise a right to relief

above the speculative level.'" Id.  The non-moving party is given the benefit of all reasonable inferences that can be drawn from the allegations in the complaint, and the court "must accept all of the complaint's well-pleaded facts as true." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).  A plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016).  Defendant bears "the burden of showing that no claim has been presented." Id.

When viewed against these standards, Defendant's motion should be denied because, as argued more fully below, Plaintiff has clearly pled sufficient facts to support cognizable claims for each cause of action that is the subject of Defendant's motion.

## LEGAL ARGUMENT

### I. PLAINTIFF HAS STATED COGNIZABLE CLAIMS OF VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE NEW JERSEY AND FEDERAL CONSTITUTIONS.

In Point I of its Moving Brief, the SOMSD argues that any State Constitutional claims predicated upon Plaintiff being placed on administrative leave without due process fail as a matter of law because (a) the New Jersey Civil Rights Act ("NJCRA") does not recognize procedural due process claims, and (b) a State-created property interest cannot serve as the basis for a substantive due process claim.  The SOMSD also makes the second argument in Point II of its Brief in support of dismissal of Count I of the Complaint

alleging a denial of due process under the federal Constitution under 42 U.S.C. section 1983.  A more careful review of the Complaint, however, reveals that Defendant's arguments lack merit because Plaintiff has pled claims sounding in due process which are cognizable under New Jersey and federal law.

Although the New Jersey Constitution "'does not enumerate the right to due process,' Article 1, Paragraph 1 'protects "values like those encompassed by the principle[ ] of due process."'"). Doe v. Poritz, 142 N.J. 1, 99 (1995) (citations omitted). Accordingly, New Jersey courts have long recognized the validity of claims alleging a violation of due process under the State Constitution. The elements of a New Jersey Constitution procedural due process violation are: (1) "a liberty or property interest has been interfered with by the State" and (2) the procedures attendant upon that deprivation were not constitutionally sufficient. Doe, 142 N.J. at 99.  Applying that test, Plaintiff clearly has pled facts in both Counts Two and Four of her Complaint, which satisfy both elements of denial of due process claim under this State Constitutional standard.

Specifically, Plaintiff has alleged in Count Two that she has a protected property interest in her tenured teaching position, that Defendant violated that interest by immediately placing her on administrative leave, depriving her of the ability to continue in her tenured teaching position; and that the SOMSD denied her *any* hearing, much less a constitutionally sufficient hearing or

other due process, before stripping her of that protected property interest. (Complaint, ¶¶ 85 - 86).  In Count Four, Plaintiff has alleged that the Defendant interfered with her liberty interest in her reputation without due process.  (Complaint, ¶¶ 85 - 86). Although she was not required to, Plaintiff has supported those allegations with detailed facts as to what occurred, and unquestionably more than the "[f]actual allegations . . . enough to raise a right to relief above the speculative level" that are needed to withstand a Rule 12(b)(6) motion to dismiss.  Twombly, 550 U.S. at 555.

The SOMSD does not dispute that Plaintiff's property interest in her tenured teaching position can serve as the basis for a State Constitutional procedural due process claim – in fact, it admits this in its Brief, stating "the procedural component of the Due Process Clause protects state-created property interests. . . ." (Moving Brief, at 11.)  Instead, the SOMSD seeks dismissal of the State Constitutional due process claim "to the extent that Plaintiff asserts a substantive due process claim under the New Jersey Constitution and bases that claim on interference with her tenure rights".  (Moving Brief, at 12.)  However, this is a straw man argument that mischaracterizes and conveniently ignores the actual nature of Plaintiff's State Constitutional due process claims in this case.

Plaintiff's argument seeking dismissal of Plaintiff's federal Due Process Claim in Count One of the Complaint is fatally flawed for the same reason: it mischaracterizes the claim as a substantive due process claim. See Moving Brief at 14 (The SOMSD seeks dismissal of the federal Due Process claim "[t]o the extent Herman is bringing a *substantive* due process challenge in Count 1….") (emphasis in original.) As a procedural due process claim, the SOMSD has not set forth any valid basis for dismissal, and, in fact, has expressly stated that it is not "challenging Herman's right to bring a procedural due process claim in Count 1" by this motion. (Moving Brief, at 13, fn. 1). It is well settled that the Fourteenth Amendment requires procedural due process prior to the deprivation of a property interest, such as plaintiff's interest in her tenure status. See Moran v. Southern Regional High School District Board of Education, 2006 WL 436201, at *4 (D.N.J. Feb. 17, 2006).

In a similar vein, because the SOMSD argues that the NJCRA applies only to substantive due process claims – and there is a reference to the NJCRA in parentheses under the headings in Counts Two and Four of the Complaint - the SOMSD tries to argue that Plaintiff's State Constitutional claims have been brought under the NJCRA, leaving Plaintiff without an avenue for relief. A more careful review of the Complaint, however, reveals that this argument lacks merit.

In analyzing Plaintiff's State Constitutional claims, this Court should be guided by the substance of the claims as set forth in the body of the Complaint itself, not by stray references to a statute contained in parentheticals under the heading of the applicable Counts.  A procedural due process violation does not need to be brought under the NJCRA.  More importantly, the actual language in Counts Two and Four of the Complaint reveal that Plaintiff's due process claims are being asserted under Article 1, paragraph 1 of the New Jersey Constitution itself, not the NJCRA. The NJCRA is not even mentioned in the substantive paragraphs of these counts, and no relief is sought under the NJCRA.[3]  The Court should reject Defendant's attempt to elevate form over substance, especially given that Defendant does not contest that New Jersey law recognizes a cognizable claim for a procedural due process violation under the New Jersey Constitution.  In both Counts Two

---

[3] Because Plaintiff has clarified that it is not seeking relief under the NJCRA and the reference to the NJCRA was in error, Plaintiff contends that there is no basis for dismissal of claims related to the NJCRA in Counts Two and Four.  However, should the Court find that the references to the NJCRA taint the allegations in those Counts, then Plaintiff submits that the appropriate remedy would be for the court to grant Plaintiff leave to file an amended Complaint rather than outright dismissal of the claims.  See, e.g., Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) ("[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.").

and Four of her Complaint, Plaintiff clearly has pled facts which satisfy the elements of denial of due process claim under that State Constitutional standard.  Accordingly, Defendant's motion seeking dismissal of Plaintiff's due process Constitutional claims should be denied.

## II. PLAINTIFF HAS STATED A VALID FEDERAL STIGMA-PLUS CLAIM AGAINST THE SOMSD.

Courts have long recognized "stigma-plus" claims under the Due Process Clause of the United States Constitution. In order to state a claim for federal stigma-plus, a plaintiff needs to make out: (a) the stigma prong, under which, "it must be alleged that purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false" and; (b) the "plus" prong, under which the plaintiff must allege that he/she was deprived of some additional right or interest, which need not be a protected "property" interest under state law. Hill v. Borough of Kutztown, 455 F.3d 225, 236, 238 (3d Cir. 2006). Here, Defendant challenges only the stigma prong of the stigma-plus claim;[4] however, it does so in a manner that clearly deviates from the standards this court is constrained to apply when considering a Rule 12(b)(6) motion.

Specifically, as its first prong of attack, Defendant argues that the Plaintiff's stigma-plus claim fails because she "cannot show the South Orange BOE published any "substantially and material

---

[4] See Moving Brief at 14 ("To satisfy the stigma prong – **which is all the present motion concerns** – the Plaintiff must show….." (Bold emphasis added.).

false" statements about her.    (Moving Brief, at 14.) However,
Plaintiff does not have to make any evidentiary showing in the
Complaint – Plaintiff only has to allege facts that, when accepted
as true, are sufficient to state a right to relief above a
speculative level. See Twombly, 550 U.S. at 555. The Complaint
clearly does that, alleging at least the following false statements
published by the SOMSD about the Plaintiff:

- Correspondence to a third-party dated October 7, 2021
  which falsely accused Plaintiff of having
  "abandoned…[her] teaching duties without…
  authorization from… [her] administrator." (Complaint
  at ¶ 36).

- October 7, 2021 statement to the public highlighting
  the District's anti-bias and anti-racism training for
  all educators, thereby insinuating that Plaintiff's
  actions towards the student were discriminatory or
  motivated by religious or other bias (Id. at ¶ 36-
  39).

- October 11, 2021 statement to the public that, "We
  are hopeful and all agree that the alleged actions of
  one employee should not condemn an entire community"
  (Id. at ¶ 49), thereby further implying and tacitly
  agreeing with the allegation that Plaintiff had
  committed an act deserving of condemnation. The
  October 11th statement contained a website link that
  SOMSD parents could use to discuss "this situation"
  with their children and family. (Id. at ¶ 50-51).

- October 18, 2021 statement by BOE President Thair
  Joshua, that framed Plaintiff as the bad actor. The
  statement focused on staff accountability, thereby
  impugning Plaintiff. (Id. at ¶ 52).

The SOMSD asserts in its Point III heading that Plaintiff's federal
stigma-plus claim has been "insufficiently pled", but is really
arguing that the Court should make the factual determination that

the alleged injurious statements were not false.  In other words, the SOMSD asks this court to reject, rather than accept, Plaintiff's allegations that these statements are false; and also to view each statement literally and in isolation to find that they are not false as a matter of law.  Unfortunately for the Defendant, both Rule 12(b)(6) and the law of defamation preclude such a determination at the initial pleading stage.

For example, the SOMSD argues, and asks this court to find, that the statements it made highlighting its anti-bias and anti-racism training do not "relay[] anything false about Herman." (Moving Brief, at 15.)  The SOMSD makes the same argument about its posting of a website link to an article entitled "Talking with Your Children About Islamophobia and Hate-Based Violence," calling the Plaintiff's claim that the dissemination of the pamphlet was defamatory "nonsensical".[5]  Id.  However, in determining whether a statement is false and susceptible to a defamatory meaning, the statement's content must be judged, not just by its literal meaning, but by its objective meaning to a reasonable person of ordinary intelligence.  The focus is on the effect of the alleged defamatory statement on third persons, that is, whether they viewed the plaintiff in a lesser light as a result of hearing or reading

---

[5] The only "nonsensical" aspect of the Defendant's dissemination of the link to the pamphlet on Islamophobia and hate-based violence on the heels of the October 6, 2021 is the notion that anyone would view that publication as anything other than the Defendant's implied assertion that the Plaintiff was Islamophobic.

the offending statement. See Arturi v. Tiebie, 73 N.J. Super. 217, 223 (App. Div. 1962); Scelfo v. Rutgers Univ., 116 N.J. Super. 403, 411 (Law Div. 1971); Russo v. Nagel, 358 N.J. Super. 254, 263-64 (App. Div. 2003). Perhaps most critically, in addition to the language used, courts must examine "the context in which the statement appears" to determine whether the statement was capable of a defamatory meaning." DeAngelis v. Hill, 180 N.J. 1, 15, (2004) (citations omitted) (courts must consider "[t]he listener's reasonable interpretation, which will be based in part on the context in which the statement appears . . . .") These are fact-sensitive inquiries which simply cannot be resolved on a Rule 12(b)(6) motion to dismiss.

As the SOMSD concedes, to satisfy the stigma prong of the stigma-plus claim, the plaintiff must show the (1) publication, (2) of a substantially and materially false statement, that (3) infringed upon the reputation, honor or integrity of the employee. (Moving Brief at 14, citing Brown v. Montgomery County, 470 F. App'x 87, 91 (3d Cir. 2012) (citations omitted)). In this case, Plaintiff has alleged that the SOMSD published statements highlighting its anti-bias and anti-racism training in the immediate aftermath of the October 6, 2021 incident – as well as statements imploring the public not to condemn an entire community due to the alleged actions of one employee, and advising the community of a website link to the article addressing Islamophobia and Hate-Based Violence – which could and did convey the false

16

impression that Plaintiff's innocent actions towards her student were really motivated by bias, racism, Islamophobia, hate, or were otherwise deserving of condemnation.  If those allegations are accepted as true, as they must be under Rule 12(b)(6), they are sufficient to satisfy the stigma prong of the federal stigma-plus claim.  At the very least, they state allegations of fact beyond mere speculation which, given their timing, context and content, could objectively be viewed by a reasonable person of ordinary intelligence as defamatory and harmful to the Plaintiff by causing her to be viewed in a lesser light as a result of hearing or reading the offending statement. See Russo, 358 N.J. Super. at 263-64.

The fact that the statements did not name Plaintiff specifically does not insulate Defendant from stigma-plus liability as a matter of law.  Although a defamatory statement must be "of and concerning" a plaintiff, the plaintiff's name does not need to be explicitly stated but can be implied. See Schiavone Const. Co. v. Time, Inc., 619 F. Supp. 684, 696 (D.N.J. 1985) ("That the article does not, therefore, explicitly refer to Schiavone, or use *his* name, does not, however, end the inquiry" "no reader could reasonably believe to the contrary."); Dijkstra v. Westerink, 168 N.J. Super. 128, 133 (App. Div. 1979) ("[T]he actual naming of plaintiff is not a necessary element in an action for libel. It is enough that there is such reference to him that those who read or hear the libel reasonably understand the

plaintiff to be the person intended."); Weller v. Home News Publishing Co., 112 N.J. Super. 502, 508 (L. Div. 1970) ("Neither the intent to defame nor the naming of the plaintiff is a necessary element in an action for libel.").

Additionally, the word "alleged" in a statement does nothing to save it from a statement's defamatory and stigmatizing nature. In Schiavone, a published article which *implied* but did not expressly state that the plaintiff was engaged in criminality was deemed sufficient to make out a case of per se defamation. Schiavone, 619 F. Supp. at 695-696 ("The statement at issue implies that Schiavone was involved in some manner in the disappearance of Jimmy Hoffa: to be linked to such notorious event most certainly implies criminality" and therefore "the relevant portion clearly defames Schiavone.").

Plaintiff's stigma-plus claim pleads all of the elements required and is supported by facts that are plausible on their face. See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted.) Even if the alleged defamatory statements are found by the court to be vague, ambiguous, or reasonably susceptible of a legally innocent as well as defamatory meaning, the ultimate determination as to whether the statements in issue were false and defamatory is necessarily a fact-sensitive inquiry, and not one that this court can make as a matter of law at this juncture of the case. For these reasons, Defendant's motion seeking dismissal

of Plaintiff's federal stigma-plus claim as a matter of law should be rejected.

### III. PLAINTIFF HAS STATED A COGNIZABLE STIGMA-BASED CLAIM UNDER THE NEW JERSEY CONSTITUION.

Defendant's sole argument in support of dismissal of Plaintiff's State stigma-based claim in Count Four of the Complaint is its erroneous contention that the claim has been asserted under the NJCRA, and therefore is not cognizable under that statute because it sounds in procedural due process. (Moving Brief, Point IV.) This argument fails for the same reason it does with respect to Plaintiff's State Due Process Claim (Count Two): it latches onto a reference to the NJCRA in a parenthetical under the heading of Count Four, to the exclusion of the substantive allegations contained within Count Four itself. Those allegations make clear that Plaintiff's State stigma-based claim is not tied to the NJCRA but rather is based upon, and derives directly and independently from, the New Jersey Constitution. As such, there is no basis for the Defendant to obtain dismissal of the claim under the NJCRA. Nonetheless, as with the parenthetical reference to the NJCRA in the heading of Count Two, should this Court find that the inclusion of that statutory reference somehow renders Plaintiff's claim vulnerable to dismissal, then Plaintiff requests that the Court grant Plaintiff leave to amend the Complaint to correct this error rather than impose the draconian remedy of dismissal. See Phillips, 515 F.3d at 245.

19

Defendant does not and cannot offer any other grounds for dismissal of Count Four because there is no question that New Jersey law recognizes a stigma-based claim arising under the State Constitution stemming from an injury to a person's reputation. Although the New Jersey Constitution does not explicitly enumerate a citizen's right to protect his or her reputation, that right has been held to be guaranteed by Article I, paragraph 1 of the Constitution of 1844. "'The right of a person to be secure in his reputation . . . is a part of the right of enjoying life and pursuing and obtaining safety and happiness which is guaranteed by our fundamental law.'" Doe, 142 N.J. at 104-105 (quoting Neafie v. Hoboken Printing & Publishing Co., 75 N.J.L. 564, 567 (E. & A.1907)). In Doe v. Poritz, the Court recognized a State stigma-based claim, and stated, "Under the State Constitution, we find protectible interests in both privacy and reputation. Our analysis differs from that under the Federal Constitution only to the extent that we find a protectible interest in reputation without requiring any other tangible loss." Id. at 104-105.

In order to plead a stigma-based claim under the New Jersey Constitution, a plaintiff must allege that she has a protected liberty interest in her reputation, that the defendant acted to harm her reputation by publishing defamatory statements regarding her, and that the defendant denied her due process. See id. at 106 ("Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. The minimum

20

requirements of due process, therefore, are notice and the opportunity to be heard.").  As she did with respect to her federal stigma-plus claim, Plaintiff has sufficiently pled the elements of this claim (Complaint, ¶¶ 100-102), and Defendant does not contest this in its motion.  Accordingly, Defendant's motion should be denied as to Count IV and Plaintiff's state stigma-based claim should be permitted to proceed.

### IV. PLAINTIFF HAS SUFFICIENTLY PLED EQUAL PROTECTION CLAIMS UNDER THE FEDERAL AND STATE CONSTITUTIONS.

In Point V if its brief, the SOMSD argues that Plaintiff's equal protection claims should be dismissed because Plaintiff has failed to identify any similarly situated individuals who were treated differently than her on account of her membership in a protected group (in this case, due to her religious and/or ethnic and/or national identity as Jewish).  However, Defendant is conflating Plaintiff's obligation to state and plead a claim upon which relief may be granted with Plaintiff's ultimate burden to prove that claim at trial.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  A plaintiff states a claim under the Equal Protection Clause by alleging that "he has been treated differently because of his membership in a suspect class *or* his exercise of a fundamental right, *or* that he has been treated differently from similarly situated others and

21

that this differential treatment was not rationally related to a legitimate state interest." Young v. New Sewickley Twp., 160 Fed. Appx. 263, 266 (3d Cir. 2005) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). Additionally, Article I, Paragraph 1 of the State Constitution has been interpreted to safeguard the same values encompassed by federal equal protection jurisprudence. See Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985).

Here, Plaintiff alleges that in the weeks and months that followed the October 6, 2021 fleeting incident with her student, despite being notified of virulently antisemitic social media posts by the student's mother and others about the Plaintiff, and threats to Plaintiff's physical safety, based on her being Jewish, the SOMSD not only did nothing - it took actions and published statements that gave oxygen to those scurrilous attacks against the Plaintiff. (Id. at ¶ 110, 120). Instead of protecting Plaintiff from this antisemitic harassment, or even listening to Plaintiff's side of the story, Defendant automatically credited the student and her parents' antisemitic version of the event. (Id.).  In contrast, the SOMSD had a markedly different response to claims of Islamophobia by the Plaintiff, summarily placing her on leave without a hearing, prejudging her actions as biased and/or racist or Islamophobic, and going to great lengths to assuage alleged community concerns about Plaintiff's alleged anti-Muslim behavior.

In other words, Plaintiff alleges that she suffered disparate treatment on account of her religion, national origin, and/or

ethnic identity, and that she was treated differently than others alleged to have similarly engaged in biased and hate-based behavior against an individual due to that person's religion, ethnicity and/or national origin. Such allegations are sufficient to state a claim of denial of equal protection under the liberal notice pleading standard that exists under the Federal Rules. See, e.g., Kuhar v. Greensburg-Salem School District, 616 F.2d 676, 677 n. 1 (3d Cir. 1980) (a plaintiff seeking to assert an equal protection claim must at the very least allege that "he is receiving different treatment from that received by other individuals similarly situated."); Cf. Hassoun v. Cimmino, 126 F. Supp. 2d 353, 367 (D.N.J. 2000) (in case alleging selective prosecution, court held that, "although Plaintiffs have not expressly stated that similarly situated entities and individuals were not prosecuted, drawing all reasonable inferences in Plaintiffs' favor, the Court finds that their allegations suffice to state an equal protection claim . . . .")

Defendant cites to three unpublished, non-precedential decisions to support its claim that the Complaint must identify a **specific** individual or individuals who were treated differently than the plaintiff to withstand dismissal of the Complaint under Rule 12(b)(6). (Moving Brief, at 17.) To the extent these cases stand for that proposition, Plaintiff submits that they are at odds with the published cases cited above, which make clear that a plaintiff satisfied its obligation to state a claim of a denial

23

of equal protection by alleging that he or she is receiving different treatment from that received by other similarly situated persons, even where the identities of those individuals are not expressly stated. At the very least, the issue of whether a plaintiff is factually similarly situated to another individual is a matter which needs to be explored in discovery and cannot simply be disposed of on a motion to dismiss. See Hassoun, 126 F. Supp. 2d 353.

However, if these unpublished cases are to be given weight by this Court, it must be noted that two of the courts dismissed the equal protection claims *without prejudice*, with one expressly granting the plaintiff leave to file an amended Complaint to allege an equal protection claim against the defendant reciting the additional facts required by the court. See Minor v. Dilks, 2022 WL 3369707, at *5 (D.N.J. Aug. 16, 2022); Celestine v. Foley, 2010 WL 5186145, at *7 (D.N.J. Dec. 14, 2010) ("The Court, however, will permit Plaintiff leave to file an Amended Complaint to allege an Equal Protection claim with respect to Defendant. . . .") As such, if this Court were to find deficiencies in the pleading of Plaintiff's equal protection claims, the remedy should be no worse than a dismissal without prejudice and granting Plaintiff leave to amend the Complaint to include the specific identity of such similarly-situated person or persons.

**V. PLAINTIFF'S COMMON LAW TORT CLAIMS ARE NOT BARRED BY THE TORT CLAIMS ACT NOTICE PROVISIONS.**

In Point VI of its brief, the SOMSD seeks dismissal of Plaintiff's tort claims on the grounds that they are barred by the Plaintiff's failure to file a timely tort claim notice under N.J.S.A. 59:8-3. (Moving Brief, at 19-20.) However, that very issue is presently the subject of a separate pending motion filed by the Plaintiff seeking leave to file a late tort claim notice, which has been fully briefed by the parties. As a result, Plaintiff will not repeat those same arguments here, but rather refers the Court to the papers submitted by the Plaintiff in support of that application, which Plaintiff hereby incorporates by reference. See ECF Doc. 4-1; 26. For the reasons set forth in Plaintiff's motion for leave to file a late tort claims notice, the Tort Claims Act notice provisions should not bar the common law tort claims asserted in Plaintiff's Complaint.[6]

---

[6] Additionally, the case law makes clear that adequacy of notice is a factual issue better determined at the summary judgment phase. Blueprint Cap. Advisors, LLC v. Murphy, 2022 WL 17887229, at * 47 (D.N.J. Dec. 23, 2022) (quoting D'Costa v. Plaza, 2017 WL 2213141, at *7 (D.N.J. May 18, 2007)). Accordingly, any attempt to determine whether notice was adequate is a factual issue that should be reserved for the summary judgment phase and is not properly considered on a Rule 12(b)(6) motion. For this additional reason, dismissal of Plaintiff's common law tort claims would be improper.

## VI. PLAINTIFF'S DEFAMATION AND FALSE LIGHT CLAIMS ARE NOT BARRED AS A MATTER OF LAW BY N.J.S.A. § 59:2-10.

In Point VII of its Moving Brief, the SOMSD argues that it is immune from liability for Plaintiff's tort claims under N.J.S.A. 59:2-10 because each claim requires the proof of intentional malicious conduct for which there is no *respondeat superior* liability on the part of the district. In advancing this argument, the SOMSD ignores or misconstrues both the allegations of the Complaint and the legal principles that govern the pleading of these claims.

As the SOMSD acknowledges, to state a claim of defamation under New Jersey law, a plaintiff must allege (1) a false and defamatory statement concerning another, (2) the unprivileged publication of that statement to a third party; and (3) fault amounting *at least to negligence* by the publisher. (Moving Brief at 21, citing DeAngelis, 180 N.J. at 12-13 (emphasis added)). Proof of actual malice is **not** a requisite element of every defamation claim, including Plaintiff's claim. Id. at 13; New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). The determination as to which standard applies in a given case depends on a variety of factors, and is usually decided by way of a motion for summary judgment rather than a pre-Answer motion to dismiss. See, e.g., Verna v. Links at Valleybrook Neighborhood Ass'n, Inc., 371 N.J. Super. 77, 99-100, (App. Div. 2004) (recognizing that

summary judgment is "particularly appropriate for disposing of non-meritorious defamation suits").

The fact that one or more cases of defamation involving a teacher was deemed to involve a matter of public concern triggering the actual malice standard (see Moving Brief, at 21-22) does not mean that the actual malice standard does or should apply in **all** cases involving teachers. Courts must look at the "content, **form**, and context" of the speech, including the identity of the speaker and the targeted audience, when determining whether speech is a matter of public or private concern. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 761 (1985); Senna v. Florimont, 196 N.J. 469, 492-93 (2008). That necessarily is a fact-sensitive determination that cannot be made from the face of a pleading, before any discovery has occurred.  With respect to content, not all speech involving well known persons or even well-known events is considered of "public concern" for the purposes of this analysis. Id. at 497.  "Context requires that [the court] look at the identity of the speaker, his ability to exercise due care, and the identity of the targeted audience." Senna, 196 N.J. at 497.  This inquiry also is heavily fact-based, and therefore ill-suited for resolution on a Rule 12(b)(6) motion to dismiss.

Similarly, and contrary to Defendant's claim, proof of false light does not always require proof of actual malice (Moving Brief, at 22).  The false light standard mirrors that of defamation – proof of actual malice is required in cases involving public

figures or matters of public concern, but a negligence standard applies to false light claims involving private figure plaintiffs and issues of private concern. See DeAngelis, 180 N.J. at 19. Plaintiff's Complaint reflects this reality, alleging in the alternative that the false and defamatory statements made by Defendant about the Plaintiff were made with "actual knowledge that the statements were false, with reckless disregard for their truth*, and/or negligently* . . . ." (Complaint, ¶ 139, 147) (emphasis added). Since Plaintiff's defamation and false light claims are not limited to allegations of actual malice, but also assert fault on the part of the Defendant under a negligence standard, the SOMSD cannot claim any absolute immunity from liability for those claims under N.J.S.A. 59:2-10, and therefore this court has no basis upon which to dismiss those claims as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's partial motion to dismiss the Complaint pursuant to Federal Rule 12(b)(6).  In the alternative, should this Court find that certain claims have been insufficiently pled even under the liberal notice pleading standard generally applicable in this court, Plaintiff respectfully requests that this Court enter an Order granting Plaintiff leave to amend her Complaint to comply with any such Order of this Court.

Respectfully submitted,

**GENOVA BURNS LLC**
*Attorneys for Plaintiff,*
*Tamar Herman*

Dated: February 13, 2023  By: */s/ Angelo J. Genova*
ANGELO J. GENOVA

16889020v2 (25020.002)

29